**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **ATAPCO PROPERTIES, INC., et al.** )<br>)<br>   **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**DOF IV HUNT VALLEY, LLC** )<br>)<br>   **Defendant.** )<br>) | **Civil Action No. 1:24-cv-01319** |

---

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant DOF IV Hunt Valley, LLC ("DOF") respectfully submits this Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment.[1]

### INTRODUCTION

Summary judgment requires at least two things: (1) a court that has subject matter jurisdiction and (2) a strong position on the merits. Plaintiffs ATAPCO Properties, Inc. and ATAPCO 245 Shawan, LLCs' ("Plaintiffs'") Motion for Summary Judgment ("Motion") (Dkt. 10) and supporting memorandum ("Memorandum") (Dkt. 10-2) establishes neither of these. As discussed in DOF's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) (Dkt. 12),

---

[1] Plaintiffs' Motion for Summary Judgment is premature. Plaintiffs moved for summary judgment without conferring with DOF under Local Rule 105.2(c). That Rule provides that if two or more parties "intend to file summary judgment motions," the parties must "agree among themselves which party is to file the initial motion" in a two-party case. Local Rule 105.2. In cases with more than two parties, the parties "shall submit a proposed briefing schedule when submitting their status report." Plaintiffs filed their motion for summary judgment before counsel for DOF appeared and did not otherwise confer regarding summary judgment briefing. On June 4, 2024, counsel for DOF reached out to counsel for Plaintiffs to confer regarding an agreed briefing schedule. Counsel for Plaintiffs informed counsel for DOF that he did not have authority to enter into the requested briefing schedule. To ensure a timely response under Local Rule 105.2(a), DOF is responding to Plaintiffs' Motion for Summary Judgment within two weeks of Plaintiffs' filing it. In the event the Court denies DOF's Motion to Dismiss (Dkt. 12), DOF expressly reserves the right to seek leave to file an amended cross-motion for summary judgment once it has answered and/or counterclaimed.

which DOF hereby incorporates by reference, this Court lacks jurisdiction.   And Plaintiffs' position on the merits conflicts with the plain language of the parties' agreements.

The undisputed facts show that Plaintiffs failed to close on a real estate deal.  This failure was a breach of contract and a default.  Having defaulted, Plaintiffs cannot now recover the earnest money.  No veto can prevent this outcome because the contract requires, at most, that a "final, enacted legislative change" to zoning regulations pass "without having been vetoed."  The "final, enacted legislative change," here was the veto override passage of the zoning change.  That vote passed "without having been vetoed."

Plaintiffs cannot establish jurisdiction and their Motion rests on a misreading of controlling agreements.  Their Motion should therefore be denied.

## COUNTER-STATEMENT OF UNDISPUTED FACTS

For the purposes of this Opposition, DOF stipulates to the following facts, which are all drawn from Plaintiffs' Memorandum or the documents attached to it.

On October 13, 2023, DOF as seller and ATAPCO Properties, Inc. as buyer entered into a Purchase and Sale Agreement ("Purchase Agreement") (Dkt. 10-3) to convey 245 Shawan Rd. in Hunt Valley, Maryland to ATAPCO Properties, Inc.

Paragraph 1(a) of the Purchase Agreement defines Stewart Title Guaranty Company ("Stewart") as the "Escrow Agent" under the agreement.   Paragraph 3(a) of the Purchase Agreement obligated ATAPCO Properties, Inc. to deliver $750,000, defined as the "Earnest Money," to Stewart.   (Purchase Agreement ¶ 3(a).)   ATAPCO Properties, Inc. fulfilled this obligation.  (Memorandum at 2.)

Paragraph 12(b) of the Purchase Agreement addresses events described in that paragraph as "conditions precedent."  Under Paragraph 12(b), "Buyer's obligation to purchase the Property

… is hereby conditioned upon full and complete satisfaction, or written waiver signed by Buyer, of each and all of the following conditions precedent … on or prior to the dates specified below: … (vi) Buyer shall have received the Legislative Approval." (Purchase Agreement ¶ 12(b).)

Paragraph 1(c) of the Purchase Agreement, in turn, defines the term "Legislative Approval" to mean:

> the **final, enacted legislative change** to the county zoning regulations/ordinance for the Property **approved by the Baltimore County Council without having been vetoed** by the County Executive, to permit at least two hundred ninety (290) single-family group townhouse units (including, without limitation, stacked townhouse units), without material deviation from the site plan to be submitted by Buyer for consideration by Councilman Wade Kach of the Baltimore County Council.

(Purchase Agreement ¶ 1(c) (emphasis added).)

In the event of default, the Purchase Agreement calls for Plaintiffs to lose, and DOF to receive, the Earnest Money. Thus, Paragraph 14(a) of the Purchase Agreement states "THE EARNEST MONEY SHALL BE DELIVERED AND RETAINED BY THE SELLER AS SELLER'S FULL LIQUIDATED DAMAGES," in the event of, among other things, "A DEFAULT BY BUYER … TO CLOSE ITS ACQUISITION OF THE PROPERTY ON THE CLOSING DATE." (Purchase Agreement ¶ 14(a)) (emphasis in original).

At the end of February, the Baltimore County Council took up the zoning measure contemplated by the Legislative Approval provision of the Purchase Agreement. Thus, on February 20, 2024, the Baltimore County Council voted to approve Baltimore County Council Bill 1-24 ("CB 1-24"). (Memorandum at 3).

Approximately one week later, on February 27, 2024, ATAPCO Properties, Inc. and DOF entered into the Second Amendment to the Purchase and Sale Agreement ("Second Amendment"). (Dkt. 10-6.) The Second Amendment stated: "Seller and Buyer agree that passage of the bill

attached hereto as Exhibit A without veto shall satisfy the Legislative Approval condition precedent to Closing in paragraph 12(b)(vi) of the Agreement." (*Id.* ¶ 3.)  Exhibit A to the Second Amendment was CB 1-24.

On February 29, 2024, the Baltimore County Executive vetoed, in accordance with Article IV, § 402 of the Charter of Baltimore County, the February 20, 2024 Baltimore County Council passage of CB 1-24. (Dkt. 10-8.)  Baltimore County Executive John Oslzewski, Jr. sent a letter to Council Member Izzy Pakota announcing and explaining his decision to veto CB 1-24. (*Id.*)

On March 4, 2024, the Baltimore County Council passed CB 1-24 a second time to override the Baltimore County Executive's February 29, 2024 veto. (Memorandum at 4.)  As a result of the March 4, 2024 veto override passage, CB 1-24 was enacted.  The Baltimore County Executive did not veto the Baltimore County Council's March 4, 2024 veto override passage of CB 1-24.

On March 28, 2024, ATAPCO 245 Shawan, LLC sent a letter (the "Termination Letter") (Dkt. 10-9) to DOF that cited a "failure to receive Legislative Approval" as grounds to terminate the Purchase Agreement.  In the same notice, ATAPCO 245 Shawan, LLC demanded return of the Earnest Money Deposit from Stewart. (Termination Letter at 1.)

On or around March 29, 2024, DOF, through counsel, sent a response letter to ATAPCO 245 Shawan, LLC. (Dkt. 10-10.)  This letter stated that the March 28th notice to terminate was "null and void" because, among other reasons, the "Buyer received the Legislative Approval on March 4, 2024." (*Id.* at 1-2.)  In addition, the letter stated: "Seller hereby elects to extend the Closing to Tuesday, April 16, 2024." (*Id.*)

On the closing date of April 16, 2024, ATAPCO 245 Shawan, LLC, through counsel, sent another notice letter. (Dkt. 10-11.)  In this letter, ATAPCO 245 Shawan, LLC stated that "as a result of one or more Buyer's Conditions Precedent not being satisfied, including the failure to

4

receive Legislative Approval" it "hereby terminates the Contract." (*Id.*)

On April 16, 2024, DOF, through counsel, sent ATAPCO 245 Shawan, LLC a notice of default letter. (Dkt. 10-12). This letter asserted "[t]his letter serves as formal notice of Buyer's breach of the Purchase Agreement for Buyer's willful failure to close on the sale of the Property to Buyer on the Closing Date (i.e., 3:00 p.m., Eastern Time, on April 16, 2024)." (*Id.*) Citing "paragraph 14(a) of the Purchase Agreement," the letter also "direct[ed] the Escrow Agent to deliver the Earnest Money to Seller, as Seller's full liquidated damages for Buyer's refusal to honor the terms of the Purchase Agreement and its willful failure to close on the sale of the Property in accordance with the terms thereof." (*Id.*)

## STATEMENT OF DISPUTED FACTS

The parties dispute whether CB 1-24 was "vetoed" as that term is used in the Purchase Agreement. As discussed more fully below, the term "veto" can mean "prohibit." The parties do not dispute the fact that the Baltimore County Council overrode the executive's veto here, and, accordingly, the county executive did not prohibit passage of CB 1-24.

## LEGAL STANDARD

### A. Declaratory judgment

The Declaratory Judgment Act authorizes district courts, in a case or controversy otherwise within their jurisdiction, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *N. Ave. Capital, LLC v. Ranger Sci. LLC*, No. 2:22-CV-00168, 2023 WL 5995501, at *3 (S.D.W. Va. Sept. 15, 2023) (quoting 28 U.S.C. § 2201(a)). Declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (*quoting Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

### B.  Summary judgment

Under Rule 56(c) "a court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Philadelphia Indem. Ins. Co. v. Markel Ins. Co.*, 649 F. Supp. 3d 84, 92–93 (D. Md. 2023) (quoting Fed. R. Civ. P. 56(c)).  Facts are material if they "might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).  Disputes are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, courts "must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Philadelphia Indem. Ins.*, 649 F. Supp. 3d at 93.

### <u>ARGUMENT</u>

Plaintiffs sued Defendants in the wrong court, and their contractual arguments misread the Purchase Agreement and the Second Amendment, thus working a forfeiture.  Either of these defects is fatal to the Motion, and it should accordingly be denied.

### A.  Plaintiffs cannot show the Court has subject matter jurisdiction.

Before obtaining summary judgment on the merits, Plaintiffs must show that the court has the power to grant relief.  "[N]o other matter can be decided without subject matter jurisdiction." *See United States v. Wilson*, 699 F.3d 789, 793 (4th Cir.2012)); *see also Cohen v. Hurson*, 623 Fed. Appx. 620, 621 (4th Cir. 2015).

For all the reasons stated in DOF's Motion to Dismiss Under Federal Rule of Civil

Procedure 12(b)(1) (Dkt. 12), its supporting memorandum (Dkt. 12-1), and the supporting Montalti

Decl. (Dkt. 12-2), Plaintiffs cannot show this Court has subject matter jurisdiction.  The existence

of Maryland citizens on both sides of the case destroys diversity.

A decision from this Court therefore would not "serve a useful purpose in clarifying and

settling the legal relations in issue." *Centennial Life Ins. Co.*, 88 F.3d at 256.  Nor would it "afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*

Similarly, without showing subject matter jurisdiction, Plaintiffs cannot show that they are

"entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).  The Motion should be denied.

### B.  In the alternative, Plaintiffs cannot show they are entitled to judgment as a matter of law because they misread the controlling agreements.

"Contract interpretation is a subject particularly suited for summary judgment disposal."

*Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir. 1999).  In the alternative to Plaintiffs'

failure to surpass jurisdictional hurdles, their misreading of the Purchase Agreement and Second

Amendment likewise requires denial of the Motion.

### 1.  Maryland law looks to the plain language of a contract to realize the parties' intent.

The Purchase Agreement contains a choice of law clause that calls for the application of

"the laws of the State of Maryland (without regard to conflict of laws rules and principles)."

(Purchase  Agreement  ¶  22(n).)   "[A]  federal  court  sitting  in  diversity  [jurisdiction]," which

jurisdiction Plaintiffs erroneously attempt to invoke, "must apply the law of the state in which the

court is located, including the forum state's choice-of-law rules." *UEK Corp. v. Univ. of Manitoba*,

No. CV GLR-13-3832, 2015 WL 11027768, at *1 (D. Md. Feb. 18, 2015).  Where the contract has

a "substantial relationship" to the jurisdiction in the choice of law clause, Maryland courts enforce

the clause. *Brito v. Major Energy Elec. Services, LLC*, 526 F. Supp. 3d 95, 110 (D. Md. 2021).

Courts "must give effect to [the] plain meaning" of unambiguous contracts "and not contemplate what the parties may have subjectively intended." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). "A contract term is ambiguous if, 'when read by a reasonably prudent person, it is susceptible of more than one meaning.'" *Id.* The interpretation of ambiguous contractual terms "is a question for the factfinder." *See MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp.*, 599 F. Supp. 2d 612, 616 (D. Md. 2009).

Maryland courts apply "the objective theory of contract interpretation." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 393–94 (2019). "The primary goal" of the objective theory "is to ascertain the intent of the parties" at formation "and to interpret the contract in a manner consistent with that intent." *Id.* (cleaned up). Courts construe unambiguous contractual language "based on what a reasonable person in the position of the parties would have understood the language to mean and not" on the parties' "'subjective intent … at the time of formation.'" *Id.* (quoting *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010)).

Courts construe conditions precedent narrowly to avoid a forfeiture. Thus, "[i]n resolving doubts as to whether an event is made a condition of an obligor's duty, **and as to the nature of such an event**, an interpretation is preferred that will reduce the obligee's risk of forfeiture." *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 165 Md. App. 262, 271 (2005) (emphasis added) (internal citations omitted).

### 2. Plaintiffs proposed reading of the Purchase Agreement ignores controlling language and would work a forfeiture.

The Purchase Agreement's plain language dictates that any Legislative Approval conditions are satisfied if the last step in CB 1-24's legislative journey was enactment. Since the last legislative act under Plaintiffs' Statement of Undisputed Facts was enactment of CB 1-24, this condition was satisfied.

Plaintiffs reach a contrary result by ignoring the words "final," "enacted," and "passage" in the Purchase Agreement and Second Amendment.  (Memorandum 6-8).  They also read the term "vetoed" too broadly.  And they overlook how legislative action becomes law under the Baltimore County Charter.  Plaintiffs' reading of the contract not only elevates form over substance; it elevates the wrong form over the correct form.  Their reading therefore cannot support summary judgment.

What matters, under the Purchase Agreement, is that the "**final**, **enacted** legislative change to the county zoning regulations/ordinance for the Property" be "approved by the Baltimore County Council **without having been vetoed**."  (Purchase Agreement ¶ 1(c).)  Similarly, what matters under the Second Amendment is that there is a "passage of [CB 1-24] without veto." (Second Amendment ¶ 3).  Under the Purchase Agreement's plain language, the veto of a non-final legislative change will not defeat "Legislative Approval."  And the veto of legislative acts that fall short of enacted legislative changes likewise will not defeat "Legislative Approval."

Black's Law Dictionary defines "enact" to mean "[t]o make into law by authoritative act; to pass."  Black's Law Dictionary (11th ed. 2019).  It defines "pass" to mean "[t]o enact (a legislative bill or resolution); to adopt."  *Id.*  It defines "passage" to mean "the passing of a legislative measure into law."  It defines "veto" to mean "[a] power of one governmental branch to prohibit an action by another branch; esp., a chief executive's refusal to sign into law a bill passed by the legislature."  *Id.*  And it defines "overridden veto" to be "[a] veto that the legislature has superseded by again passing the vetoed act, usu. by a supermajority of legislators."  *Id.*

The foregoing definitions provide guideposts for construing the Purchase Agreement and Second Amendment.  First, an "enacted legislative change" is a legislative change that was "ma[de] into law."  Similarly, "passage" is an act that involves making "a legislative measure into

law."  Overriding a veto involves the legislature superseding a veto by "again passing" the vetoed act for a second time.  And the word veto can mean "to prohibit."

Article III, Section 308(f) of the Baltimore County Charter explains the three ways that legislative action becomes law in Baltimore County.  First, "upon the passage of any legislation by the county council" the legislation "shall stand enacted" if the "county executive … within ten days … return[s]" the legislation "to the county council with his approval endorsed thereon." Article III, § 308(f), Baltimore County Charter.  Second, in the event the county executive vetoes legislation, the legislation nevertheless "shall stand enacted" if the county council "consider[s] the enactment" of the legislation "notwithstanding the executive veto" and "a majority plus one of the total number of the county council members … vote in the affirmative" for the legislation.  *Id.* Third, legislation "shall stand enacted" if the county executive "fail[s] to return any such legislation within ten days after the date of its presentation to him."  *Id.*

Applying these concepts and definitions to the Purchase Agreement and Second Amendment clearly shows that the Legislative Approval condition was satisfied for several reasons.  First, the legislation vetoed on February 29, 2024 was not an "enacted legislative change." It was not "enacted" because it was never made into law under the three methods for enacting legislation under the Baltimore County Charter.  Thus, there was no veto of an "enacted legislative change."  And the actual enacted legislation, which occurred through a separate passage of CB 1-24, occurred without that passage "having been vetoed."

Second, and relatedly, even if the vetoed legislation was an "enacted legislative change," it was not the "final, enacted legislative change."  As the definition of "overridden veto" and the veto override process in the Baltimore County Charter make clear, a veto override requires a separate, later "passage" of legislation.  This separate passage was both a "passage … without

veto" under the Second Amendment and the "final, enacted legislative change" under the Purchase Agreement. It was a "passage … without veto" because, under the Baltimore County Charter, a veto override vote cannot be vetoed.

Third, construing the "Legislative Approval" condition narrowly to avoid a forfeiture, the word "veto" can mean "to prohibit." It is undisputed that the Baltimore County Council overrode the executive's veto, and, accordingly, the executive did not prohibit passage of CB 1-24. (Memorandum at 3-4). To the extent the term "vetoed" is ambiguous, this is a question for the factfinder, *MJ Harbor Hotel*, 599 F. Supp. 2d at 616, which would preclude summary judgment.

DOF's reading of the Purchase Agreement, in addition to being the only reading faithful to the Purchase Agreement's text, also accords with the parties' intent and common sense. The definition of Legislative Approval suggests Plaintiffs wanted a zoning change so they could develop townhomes. The essence of that bargain is that the Baltimore County government enact the zoning change at all—not that the zoning change is enacted in a particular way.

Plaintiffs cannot evade their contractual duties merely because their sought-after zoning change became law through a veto override. Under the plain meaning of the Purchase Agreement, Plaintiffs obtained Legislative Approval. The condition in Paragraph 12(b)(vi) was therefore satisfied. Plaintiffs nevertheless failed to close, thereby defaulting, which means DOF gets the earnest money under Paragraph 14 of the Purchase Agreement. Plaintiffs are not entitled to judgment as a matter of law. The Motion should therefore be denied.[2]

---

[2] Plaintiffs also request as relief attorneys' fees and costs. (Memorandum at 10.) But they have made no factual or legal showing of entitlement to fees in their Memorandum or elsewhere. A Plaintiff that "fails to support …allegations with any evidence or explanation" is not entitled to judgment as a matter of law. *Rouse v. Washington Metro. Area Transit Auth.*, No. 8:22-CV-03088-AAQ, 2024 WL 473806, at *4 (D. Md. Feb. 6, 2024) (granting summary judgment against Plaintiff who failed to support her allegations).

## CONCLUSION

Plaintiffs cannot show the Court has subject matter jurisdiction and their requested relief rests on a misreading of controlling agreements.  The Motion should therefore be denied.

June 5, 2024                                   Respectfully submitted,

 /s/ John McKenzie
_____

John W. McKenzie, III (Bar No. 30822)
HOLMES COSTIN & MARCUS PLLC
908 King Street, Suite 330
Alexandria, Virginia 22314
P: (703) 810-3166
F: (703) 439-1873
jmckenzie@hcmlawva.com
*Counsel for Defendant DOF IV Hunt Valley, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 5, 2024 I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ John McKenzie
_____

John McKenzie